IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCKETPOWER, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>STRIO CONSULTING, INC.,<br><br>    Defendant. | Case No. 20-cv-06446-CRB<br><br>**ORDER DENYING MOTION TO DISMISS OR TRANSFER VENUE** |

RocketPower, Inc. is suing Strio Consulting, Inc. for breach of contract. RocketPower alleges that Strio agreed to perform and review background checks for one of RocketPower's clients and did not do so. Strio has moved the Court to either dismiss the case for lack of personal jurisdiction or transfer the case to the District of Minnesota. The Court denies Strio's motion.

## I.     BACKGROUND

RocketPower—a company incorporated in Delaware with its principle place of business in California—provides outsourced or contract recruiters and staffers to other companies. See Complaint (dkt. 1-A) ¶ 5; Notice of Removal (dkt. 1) ¶ 7. Strio—a company incorporated and with its principle place of business in Minnesota—provides administrative services like payroll, employment benefits, and background checks to companies including RocketPower and, pursuant to a verbal agreement with RocketPower, some of RocketPower's clients. Complaint ¶ 6; Notice of Removal ¶ 8. RocketPower alleges that when RocketPower identified a qualified candidate for a client, Strio was contractually "responsible for conducting a background check and other relevant screening" according to the client's needs. Complaint ¶ 12.

Nuro, Inc., is a California robotics company that develops self-driving vehicles. Id. ¶¶ 18–19. Nuro hired RocketPower to recruit "Safety Drivers," "Autonomous Vehicle Operators," (AVOs), and "Command Center Operators" (CCOs). Id. ¶ 20. Nuro required that job applicants successfully complete a background check; ones with driving-related offenses would not qualify. Id. ¶¶ 23–24. RocketPower placed over 100 workers with Nuro in California, though RocketPower also placed workers with Nuro in Arizona and Texas. Caldwell Decl. (dkt. 11-1) ¶¶ 20, 22.

RocketPower alleges that Strio knew of Nuro's screening requirements and their importance to RocketPower's relationship with Nuro. Id. ¶¶ 26–27. Nonetheless, Strio "either (1) failed to conduct the background checks for the workers or (2) failed to adequately review the background checks conducted for disqualifying criteria." Id. ¶ 36. This came to light because in February 2020, Nuro conducted its own background check, which "flagged workers for whom Strio was responsible for conducting the background check" including at least one who had been convicted of driving under the influence. Id. ¶¶ 34–35, 37. Once that happened, "RocketPower saw a sharp decline in its placement of workers with Nuro." Id. ¶ 46.

On July 24, 2020, RocketPower sued Strio for breach of contract in the Superior Court of California in Alameda County. See id. at 1–2. On September 14, 2020, Strio removed the case to this Court under 28 U.S.C. § 1441(b) based on diversity jurisdiction. See Notice of Removal ¶ 6.[1]

Strio now moves the Court to either dismiss the case for lack of personal jurisdiction or transfer the case to the District of Minnesota. See Mot. to Dismiss (dkt. 10)

---

[1] Because RocketPower is incorporated in Delaware and has its principal place of business in California, and Strio is incorporated and has its principal place of business in Minnesota, the parties are diverse. See Notice of Removal ¶¶ 7–9. And although the Complaint states that Strio's liability "exceeds $25,000," Strio has submitted a declaration suggesting that the amount at stake is $28,915.41 per month for at least five months. See id. ¶ 15; Fulhart Decl. (dkt. 10-2) ¶ 4. The Court thus finds "by a preponderance of the evidence" that the amount in controversy exceeds $75,000. See Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 416 (9th Cir. 2018) (citation omitted). Therefore, the Court has subject matter jurisdiction under 28 U.S.C. § 1441 and 28 U.S.C. § 1332(c)(1).

at 5, 12.

## II.   LEGAL STANDARD

### A.   Personal Jurisdiction

When a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prime facie showing of jurisdiction.  See Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  "[U]ncontroverted allegations in the complaint must be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be resolved" in the plaintiff's favor, Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004), but disputed allegations in the complaint that are not supported by any evidence cannot establish jurisdiction, see In re Boon Glob. Ltd., 923 F.3d 643, 650 (9th Cir. 2019).

A court may exercise personal jurisdiction over an out-of-state defendant when doing so is permitted by the forum state's long-arm statute and where the exercise of jurisdiction does not violate federal due process.  Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  Because California's long-arm statute allows courts to exercise personal jurisdiction to the extent permitted by the Due Process Clause, see Cal. Code Civ. Pro. § 410.10, that leaves only the due process inquiry.

Due process requires that a defendant not present in the forum state have "certain minimum contacts" with the state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1954).[2]  There are "three requirements"—

> (1) The defendant must either purposefully direct his activities or purposefully avail himself to the privileges of conducting activities in the forum;
> (2) The claim must be one which arises out of or relates to the defendant's forum related activities; and

---

[2] A court may also exercise "general" personal jurisdiction where a defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home" there.  Daimler AG v. Bauman, 571 U.S. 117, 127 (2014).  That is not the case here.

(3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017).

### B. Transfer

"For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district of division to which all parties have consented." 28 U.S.C. § 1404(a). A court must "weigh multiple factors in its determination whether transfer is appropriate in a particular case." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). A court may consider "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Id. at 498–99.

## III. DISCUSSION

Strio argues that the Court lacks personal jurisdiction over Strio because Strio does not have the required "minimum contacts" with California. Mot. to Dismiss at 1. In the alternative, Strio argues that the Court should transfer this lawsuit to Minnesota for efficiency reasons because there is pending litigation between the parties in the District of Minnesota. Id. 1–2, 12–13. Because the Court has personal jurisdiction over Strio and the relevant factors do not support transferring this case to Minnesota, the Court denies Strio's motion.

### A. Personal Jurisdiction

The Court concludes that it has jurisdiction over Strio because Strio purposefully contracted to provide services to RocketPower, a California company, and those services included providing employment screening for California workers that Strio knew would

4

work at Nuro, another California company.

First, Strio has "purposefully directed" its activities at California. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). When it comes to "interstate contractual obligations," parties that "reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Id. (citation omitted). Although a "contract with an out-of-state party alone . . . clearly cannot" establish the required minimum contacts, the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" determine "whether the defendant purposefully established minimum contacts within the forum." Id. at 478–79. Here, Strio reached beyond Minnesota in creating a contractual relationship with RocketPower, a citizen of California. Complaint ¶¶ 10–17. And although negotiations took place partly in Minnesota and partly remotely between Minnesota and California, see Fullhart Decl. (dkt. 10-2) ¶ 16; Caldwell Decl. ¶ 6–8, the parties' course of dealing shows that Strio purposefully established contacts with California. Pursuant to its agreement with RocketPower, Strio indirectly but purposefully provided certain services to Nuro, a California company. Complaint ¶¶ 28–29. Those services were tailored to Nuro's specific needs, id. ¶ 26, and the California workers entered into joint employment agreements with RocketPower and Strio, Caldwell Decl. ¶ 11. Strio's contacts with California are thus far from "random," "fortuitous," or "attenuated." See Burger King, 471 U.S. at 480 (citation omitted).

Second, RocketPower's claim "arises out of" Strio's California-related activities. Axiom Foods, 874 F.3d at 1068. RocketPower alleges that Strio breached the contract it made with RocketPower, a California company, by failing to screen workers that it jointly employed with RocketPower on behalf of Nuro, a California company.

Third, exercising jurisdiction in this case would be reasonable. See id. "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other

1  considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477.
2  The Ninth Circuit "has identified seven relevant factors in determining the reasonableness
3  of asserting jurisdiction over a nonresident defendant." FDIC v. British-Am. Ins. Co.,
4  Ltd., 828 F.2d 1439, 1442 (9th Cir. 1987).          .

    (1)    The extent of purposeful interjection into the forum state;
    (2)    The burden on the defendant of defending in the forum;
    (3)    The extent of conflict with the sovereignty of defendant's state;
    (4)    The forum state's interest in adjudicating the dispute;
    (5)    The most efficient judicial resolution of the controversy;
    (6)    The importance of the forum to [the] plaintiff's interest in convenient and effective relief;
    (7)    The existence of an alternative forum.

Id.

Because these factors are neutral, or point both ways, Strio has not presented a compelling case that exercising jurisdiction would be unreasonable. As discussed above, Strio purposefully interjected into the forum state by agreeing with RocketPower to provide certain services to RocketPower and its clients, including California clients. Although defending in California may burden Strio to some extent, RocketPower chose to sue in California, and any relevant third parties (e.g., Nuro representatives and job applicants) are likely located in California, not Minnesota. For the same reason, and despite litigation between the parties in the District of Minnesota, this specific controversy would be more efficiently adjudicated in California.

Therefore, the Court has personal jurisdiction over Strio.

**B.     Transfer**

The Court denies Strio's motion to transfer venue because the Jones factors do not support transferring this case to Minnesota. See 211 F.3d at 498.

Some of the factors relevant to a motion to transfer venue under 28 U.S.C. § 1404(a) do not favor either party. For example, "the location where the relevant agreements were negotiated and executed," id., was both California and Minnesota, see Fullhart Decl. ¶ 16; Caldwell Decl. ¶ 6–8. Similarly, the parties' contacts with California

and Minnesota are a wash because RocketPower and Strio have both established contacts with California and Minnesota, and the contacts in both places are relevant to this suit. See Jones, 311 F.3d at 498–99. The "state that is most familiar with the governing law," id. at 498, remains unclear at this stage because the parties dispute whether California or Minnesota law governs RocketPower's breach of contract claim and have not adequately briefed this issue.[3]

But other factors favor not transferring this case. The "plaintiff's choice of forum" obviously points in that direction. Id. So do the "availability of compulsory process to compel attendance of unwilling non-party witnesses" and the "ease of access to sources of proof." Id. Under Rule 45(c)(1) of the Federal Rules of Civil Procedure, a subpoena may command a person to attend a trial, hearing, or deposition only "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person" if certain additional requirements are met. Fed. R. Civ. P. 45(c)(1). Here, the only non-party persons with apparent relevance are Nuro representatives, job applicants, and workers. These persons are likely located in California, not Minnesota. And it is unclear what would prevent the parties from obtaining any pertinent evidence currently located in Minnesota.

Strio argues that existing litigation in the District of Minnesota means that transferring this case would be more efficient. See Mot. to Dismiss at 13–15. But a closer look at the Minnesota suits indicates that they involve different issues. See Strio Request for Jud. Notice (dkt. 10-1). For example, the Northern District of California previously transferred a breach of contract suit brought by RocketPower against Strio to Minnesota based on an express forum-selection clause in one of the relevant agreements. See No. 19-cv-2900-WHA (N.D. Cal) Order Granting Transfer (dkt. 10-1 Ex. 1) at 4. No such clause

---

[3] Either way, California choice-of-law principles will determine which state law controls. See Van Dusen v. Barrack, 376 U.S. 612, 642 (1964) ("[T]he transferee district court must under § 1404(a) apply the laws of the State of the transferor district court."). But if that were determinative, no case would ever be transferred.

7

exists here. And that transferred suit involves the validity of certain non-compete agreements and other issues related to this suit only insofar as they arise out of the same general set of agreements. See id. at 2–3. In another Minnesota suit, Strio is suing RocketPower for not paying its share of costs or giving Strio its share of profits, see id. at 3, and RocketPower has asserted similar counterclaims against Strio, see No. 19-cv-1048 (D. Minn.) Answer to Second Amended Compl. (dkt. 10-1 Ex. 3) ¶¶ 36–58. Such claims are not present here. The Minnesota lawsuits do not involve Strio's employment screening obligations or whether Strio breached those obligations with respect to RocketPower's relationship with Nuro.[4]

In sum, it may be legally and logistically difficult for the District of Minnesota to resolve this more California-centric case. That the parties are litigating other issues in Minnesota is not enough to warrant a transfer.

## IV.   CONCLUSION

For the foregoing reasons, the Court DENIES Strio's motion to dismiss or transfer venue.

**IT IS SO ORDERED.**

Dated: November 18, 2020

_____
CHARLES R. BREYER
United States District Judge

---

[4] For the same reason, the "first-to-file doctrine" does not apply. When "a complaint involving the same parties and issues has already been filed in another district," the first-to-file rule "permits a district court to decline jurisdiction over an action." Pacesetter Sys., Inc. v. Medtronic, Inc., 678 F.3d 93, 94–95 (9th Cir. 1982). As this formulation makes clear, the doctrine is discretionary and "is to be applied with a view to the dictates of sound judicial administration." Id. at 95. As discussed above, this case involves different issues than the cases currently pending in the District of Minnesota.